Michelle R. Burrows 86160
michelle.r.burrows@gmail.com
420 SW Washington St. Suite 300
Portland, OR 97204
503-241-1955
503-241-3127
Attorney for Plaintiff

Hala Gores 890489
hala@goreslaw.com
Hala J. Gores P.C.
1332 S.W. Custer Drive
Portland, Oregon 97219
503-295-1940
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| ROSA HILL, Personal Representative of the ESTATE OF ZACHARY HILL, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, JOHN AND JANE DOES 1-15, <br><br> Defendants. | Case No. <br><br> COMPLAINT <br><br> Civil Rights Violations; 8th Amendment Failure to Protect; Delay of Essential Medical Care: Wrongful Death <br><br> 42 U.S.C. §1983 (Bivens Claims) <br><br><br> Jury Trial Demanded |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff by and through her attorney, brings her complaint herein and states and alleges

as follows:

Page 1 COMPLAINT

## INTRODUCTORY STATEMENT

1.

This action is filed by Plaintiff under 42 U.S.C. § 1983 and 28 U.S.C. § 1346, for acts committed by individual federal employees at Sheridan Federal Detention Center ("Sheridan FDC"), which caused the death of Zachary Hill, on or about February 27, 2015.  Mr. Hill had been in the custody of the federal Bureau of Prisons for several years at the time of his death. Mr. Hill had severe chronic mental health disabilities which rendered him a more vulnerable prisoner.

2.

This court has jurisdiction over Plaintiff's claim of violations of federal Constitutional Rights under 28 U.S.C. §§ 1331 and 1343.

3.

Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the defendants reside in the District of Oregon and Plaintiffs' claims for relief arose in this district.

4.

The court has original jurisdiction over Plaintiffs' federal tort claims pursuant to 28 U.S.C. 1346.  Plaintiff gave timely notice of tort claim pursuant to 28 U.S. C. 2401(b). That tort claim was denied by the United States.  Plaintiff is further entitled to attorney fees under 42 U.S.C. 1988.

## PARTIES

5.

Rosa Hill is the mother of Zachary Hill, the decedent.  She was appointed as the Personal Representative of her son's Estate in Multnomah County.  Rosa Hill and Zachary Hill are Native American.



6.

The United States of America is the governing body which includes the Bureau of Prisons and employs all of the individually named defendants herein. The individually named employees of the Bureau of Prisons were at all times relevant acting under color of law and were "federal agents" for purposes of this litigation.

7.

John and Jane Does were employees of the Bureau of Prisons ("BOP") or contracted by BOP to provide health care services at Sheridan FDC.  These individual employees are sued in their individual capacity under a Bivens claim.  John and Jane Does may also be security staff at Sheridan FDC who were responsible for provide safety and security to Mr. Hill during his incarceration.  These individual employees are sued in their individual capacity under a Bivens claim.

FACTUAL BACKGROUND

8.

Zachary Hill first experienced a mental health crisis when he was 20 years old. He was placed in the Oregon State Hospital several times because of his hallucinations and mental health problems. By November, 2002 he had declined to the point that he was no longer able to care for himself and was a danger to himself.

9.

During the Thanksgiving holiday in 2002, Mr. Hill became manic and heard commanding voices compelling him to rob a bank. Mr. Hill left his mother's house that night, walked into a bank and demanded money. He was walking home from the robbery in a state of extreme confusion and was highly delusional. He was observed talking to himself. He was arrested and began a lifelong battle against the Bureau of Prisons and against his mental illness.

10.

In the original court prosecution for the bank robbery, Mr. Hill was found not guilty by reason of insanity. Mr. Hill was first incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). Mr. Hill was imprisoned there for approximately 6 years and then released to his mother. Mr. Hill has received an Axis I diagnosis of Schizophrenia (with auditory and visual hallucinations), and polysubstance abuse of cocaine, methamphetamine and alcohol. Mr. Hill developed a severe addiction to alcohol and methamphetamine. While in custody he developed an addiction to Wellbutrin which he would inhale nasally.

11.

Over the course of his 12 years in federal prison Mr. Hill was evaluated and followed by Dr. William Sack at OHSU, whose original assessment resulted in the Guilty but insane conviction. Dr. Sack also diagnosed Mr. Hill several times when Mr. Hill's release status would be presented to the court.

12.

On May 16, 2007 the warden for the U.S. Medical Center for Prisoners in Springfield, Missouri ("MCFP Springfield") recommended Mr. Hill be conditionally released based on the fact that Mr. Hill had recovered from his mental disease or defect to such an extent that under a prescribed regimen of treatment he would no longer create a substantial risk of bodily injury or serious damage to another person.  On July 17, 2007, Judge Ancer Haggerty ordered Mr. Hill be released under standard and special conditions. Mr. Hill was not permitted to consume alcohol or drugs while on release status.

13.

On August 7, 2007 Mr. Hill was released to the Klamath Community Treatment Center in Klamath Falls for inpatient treatment.  Mr. Hill left the facility and a warrant was issued for his arrest on September 13, 2007.  He was once again released on October 1, 2007 on the conditions that he live with his mother, wear a locator bracelet and return to the treatment facility.  Mr. Hill had a significant and serious alcohol dependency and his mental health issues were not being well controlled.

14.

Mr. Hill re-entered the Klamath Treatment Center and completed his inpatient treatment plan on January 4, 2008.  Because of violations of his conditions of release, including continuing to use alcohol and refusing to provide urine samples, Mr. Hill was required to enter a residential reentry center ("RRC").  On March 11, 2008, a warrant was obtained when Mr. Hill was terminated from RRC for the use of alcohol.

15.

On April 8, 2008, Mr. Hill was once again released with the condition he re-enter the Klamath Falls treatment facility.  He left the facility and was arrested on June 11, 2008 and returned to his mother's home on June 24, 2008.  Mr. Hill's release was revoked when he cut off

his monitoring device.  He was taken back into BOP custody on July 15, 2008. He was then housed at MCFP Springfield again.

16.

Mr. Hill's mental health deteriorated significantly in 2008 while at MCFP Springfield. He made two serious suicide attempts at the facility requiring 30 stitches in his neck and 21 staples in his arm.  Mr. Hill also experienced what staff called significant behavioral difficulties, such as fighting and misusing his authorized medications, including Wellbutrin.  Mr. Hill's mental state was deteriorating and it appears he may have been hearing voices and began to engage in self-harm and self-mutilation activities, which resulted in him receiving disciplinary sanctions, including solitary confinement.

17.

Mr. Hill's mother reports his letters were full of desperation and depression, and that he believed he would never be free again.  As his solitary confinement and punitive treatment continued, Mr. Hill became more desperate and began cutting himself.  Defendants have refused to provide Mr. Hill's medical and psychological records for this time period so Plaintiff is basing some factual allegations on Mr. Hill's letters and calls with his mother and aunt.

18.

While at MCFP Springfield facility Mr. Hill reports numerous beatings, some by security staff, extreme isolation, pressure holds including tying Mr. Hill up over night with his hands secured over his head, and isolation from contact with his family, including disallowance of letters or phone calls. Mr. Hill's mother and aunt have been steady and courageous advocates for Mr. Hill, but at one point they were told by staff at MCFP Springfield that if they tried to help Mr. Hill he would receive more time in the hole as retaliation, as well as the loss of his other benefits such as telephone calls, commissary and contact with other individuals.

19.

After his second nearly successful suicide attempt, Mr. Hill was only seen at the ER for a few hours and returned to the prison the same night.  He was only given sanitary wipes for his wounds and no pain medication.  Mr. Hill was put into four point restraints with his arms held over his head all night long.  Mr. Hill reported lying there all night crying in pain, but no one responded.  There was no counseling or intervention to ascertain the reasons for the suicide attempt.

20.

During Mr. Hill's custody at MCFP Springfield, he was treated by Dr. Garrity who is a prison psychiatrist.  Dr. Garrity was the only individual at MCFP Springfield who would accurately communicate on Mr. Hill's condition. While at MCFP Springfield Zachary received numerous medications, some of which were provided in extremely high doses, including Haldol.  Some of the medications administered to Mr. Hill caused suicidal ideation.  Mr. Hill also suffered from a thought disorder which rendered him unable to perceive another person's motives and weakened his social interactions.  Mr. Hill became so frightened of the abuses of other prisoners and the staff that he withdrew.  Eventually, because he could not comprehend social cues, he would inevitably get into trouble.

21.

Mr. Hill suffered from an untreated heart disease which had 80% blocked his coronary artery. The combination of Zoloft and Effexor—both drugs being administered by BOP to Mr. Hill caused an interaction in Mr. Hill's body.  The drugs were found in his blood stream at the time of his autopsy, but no tablets were found in his stomach.  There was a significant amount of Sertraline sufficient to cause death from serotonin syndrome.  The two psychotropic drugs being given to Mr. Hill at the time of his death worsened the effect of elevated serotonin.  Mr. Hill's cause of death was the stopping of his heart from an arrhythmia due to elevated temperatures caused by elevated serotonin levels.

22.

Mr. Hill had a long history of abusing illegal drugs as well as his prescription medications. He would crush the pills and inhale them to achieve the required response. It is believed in his numerous and extensive BOP records, Mr. Hill was someone who should never have been given medications in his cell but rather should have been required to go to a regulated medicine distribution location. He lacked the insight or understanding to self-regulate his medication.

23.

BOP staff are also noted as giving Mr. Hill too much Levothyroxine for his Hashimotos Thyroiditis. In one noteworthy incident, the staff at MCFP Springfield gave Mr. Hill a nearly fatal dose of Haldol which caused an excruciating experience for Mr. Hill.

24.

As a result of his treatment at MCFP Springfield, Mr. Hill developed deeper psychosis and likely a very significant case of PTSD. He was much worse off than when he first went into the facility. The various BOP facilities created and maintained significant medical and mental health records of Mr. Hill which were transferred to Sheridan FDC, where Mr. Hill ultimately died.

25.

On September 4, 2013, Mr. Hill was conditionally released from BOP custody. He began his release on October 1, 2013 at his mother's home. Because of his seriously deteriorated mental status, Mr. Hill began to use alcohol, failed to take his prescribed medications as ordered and failed to attend treatment as directed. The conditions of his release were modified on December 4, 2013.

26.

Once again, a warrant was issued for his arrest and on February 3, 2014, Mr. Hill was found in violation of the terms and conditions of his release. The terms of his release were once

again modified and he was released to the Native American Rehabilitation Association ("NARA") on May 5, 2014 to commence treatment.  On May 8, 2014, Mr. Hill walked away from this treatment program and was once again arrested.

27.

On June 30, 2014, Mr. Hill was found in violation of the conditions of his release by failing to reside and participate in a residential treatment facility.  He was ordered to return to NARA on July 22, 2014.  NARA contacted Mr. Hill's release officer to inform her that he could no longer participate in their program because of his continual consumption of alcohol.  He was ordered to take an injectable anti-psychotic on July 31. 2014.  He was once again released by the court to take more treatment on August 11, 2014.

28.

After failing several parts of his release conditions, Portland Police and Emergency Personnel responded to Mr. Hill's mother's house on August 26, 2014, where Mr. Hill had suffered a seizure.  Mr. Hill admitted he took two Bupropion tablets and snorted a third one. The Marshals were once again called upon to arrest a disoriented and slightly psychotic Zachary Hill.  He had to be tased into compliance.  That was the final time he was arrested prior to his death.

29.

Following his release from MCFP Springfield, and prior to his August, 2014, arrest Mr. Hill lived with his mother, Rosa Hill.  She described how difficult it was for her severely ill son to acclimate after the experiences at MCFP Springfield.  He experienced amazement at finally being able to write with a pen.  He was too anxious to take cars because they moved too fast.  He felt he was constantly being watched and did not enjoy leaving the house.  No one provided alcohol or mental health treatment as part of his release plan and once again Mr. Hill began to isolate himself and felt too much anxiety to be around people.  When he was in groups of people, such as in treatment, he felt threatened and ran away to ease the anxiety of the constant sensory input.

30.

Following his last arrest, Mr. Hill was first housed at the Columbia County Jail and eventually housed at the Sheridan FDC facility.  While at Sheridan FDC, Mr. Hill was given a month's worth of medications at one time.  Because of his mental disorder and addiction history, Mr. Hill should never have had access to his medications in this manner.  It appears Mr. Hill snorted his Zoloft to the point where it caused arrhythmia, which caused Mr. Hill to aspirate. This would explain the food present in his lungs during his autopsy.  It is likely Mr. Hill was simply doing what he had been doing much of his life, taking drugs in a fashion to experience a high.  However, because of his thought disorder and likely schizophrenia, he did not have the insight to understand the amount of Zoloft he was taking.  Also, because his serious heart condition went untreated by BOP for nearly 12 years, Mr. Hill died from snorting almost his entire bottle of Zoloft on his eighth day of custody in Sheridan FDC.

31.

In the few days before Mr. Hill died, he was observed receiving entire bottles of his medication from Sheridan FDC staff.  Mr. Hill was also lying down most of the time, not eating and not socializing.  Mr. Hill's cellmate reported that Mr. Hill was obviously delusional, such that the security staff and other inmates were aware.  Despite this obvious signs of mental breakdown and the 12 year history of psychotic breaks and abuse of medications, no one from Sheridan FDC assisted Mr. Hill, properly regulated his medications or intervened to protect him. The staff at Sheridan FDC quickly labeled his death a suicide even before the autopsy or toxicology reports were received.

32.

Plaintiff has requested all the records for Zachary Hill from Sheridan FDC, FMC Rochester and MCFP Springfield. Plaintiff filed a federal notice of tort claim and has requested all of Mr. Hill's BOP records at least twice.  Defendants have refused to provide those records.

Plaintiff has secured extensive documentation from the Federal Public Defender's Office, who provided legal representation for Mr. Hill throughout his many court matters.

33.

Plaintiff does not know the identities of the Sheridan FDC personnel responsible for provide medical and mental health treatment and care for Mr. Hill because BOP has refused to produced Mr. Hill's records to plaintiff. Plaintiff does not know the names of nurses, physicians or security staff who failed to monitor Mr. Hill's medications, failed to provide timely and adequate medical and mental health for him, nor does plaintiff know the names of individual who failed to care for Mr. Hill while in custody. When the records are finally received from BOP, those names will be substituted for the John Does in this action.

**First Claim for Relief**

**8th Amendment Delay of Adequate Medical Care**

*John and Jane Does Medical Staff*

34.

Plaintiff realleges all previous allegations as if more fully set forth.

35.

Zachary Hill was a prisoner at the time of his death and was entitled to the protections against cruel and unusual punishment under the 8th Amendment to the United States Constitution. Zachary Hill was entitled to be free from cruel and unusual punishment pursuant to the 8th and 14th Amendments of the United States Constitution. This protection includes a right to adequate and timely psychological care and to be protected against preventable harm.

36.

Failure to provide adequate psychological care amounts to deliberate indifference to a prisoner's well being and constitutes cruel and unusual punishment in violation of the 8th Amendment. Recklessness with respect to the required standard of care can constitute

"deliberate indifference" to a prisoner's medical needs under the 8th Amendment.  In this case, Defendants acted with deliberate indifference in failing to respond to Plaintiff's serious psychological needs.

37.

At the time of his incarceration Zachary Hill had been determined to be "insane" and legally responsible for the crimes of his conviction.  He was in custody at Sheridan FDC on a violation of the conditions of release for his original conviction, and the determination of the legal incapacity had not been reversed or altered.  Mr. Hill was legally and mentally incompetent at the time of his death and entitled to a higher duty of care.

38.

At the time of his death, Zachary Hill should have been under medical and psychological care, which required the administration of medications for those conditions.  The individual defendants, who are most likely medical practitioners, failed to protect Zachary Hill by timely and adequately treating his underlying psychological disorder in the following ways:

1. John and Jane Does were staffed at Sheridan FDC with the duty to be aware of and knowledgeable in Mr. Hill's past serious and significant psychological history inside BOP including his serious drug and alcohol addiction;

2. John and Jane Does were given full access to Mr. Hill's prior medical and psychological history which included evidence of his two previous suicide attempts, his self-harm activities, his impulse control difficulties, his diagnoses with Schizophrenia, auditory and visual hallucinations and a serious heart condition.

3. John and Jane Does were given information that Mr. Hill had a significant addiction disorder which historically manifested itself in serious self-harming ways.  Mr. Hill would crush his prescription drugs and inhale them nasally. He would often do this with a significant number of pills at a time.

4.  John and Jane Does knew or should have known Mr. Hill should not be given unfettered access to his medication in his cell with the known historical risk of overdosing and misuse.  Despite this knowledge, John and Jane Does gave at least two different medications, which were contra-indicated with his heart condition, and in an overdose caused heart failure and death.

5.  John and Jane Does knew or should have known Mr. Hill had not historically been given unlimited access to his medications inside his cell but was required to go to a medical distribution center (pill line) to be given the exact and precise amount of medication. But despite this knowledge, John and Jane Does gave Mr. Hill at least a one month supply of his medication.  Mr. Hill consumed the pills within a several days, which lead to his death.

6.  John and Jane Does knew or should have known Mr. Hill had a serious heart condition, which had gone untreated by BOP for a decade, and that any inappropriate amount of narcotics in his system would likely cause a cardiac event with a highly likely outcome of death;

7.  John and Jane Does knew Mr. Hill was a high risk inmate with a long and troubled history and should have been closely monitored for any risky behaviors.  Despite this knowledge, defendants failed to have Mr. Hill in proper housing, failed to provide his regular monitoring, failed to keep his medications out of the cell, failed to have Mr. Hill seen by trained and competent care providers.

8.  John and Jane Does knew Mr. Hill required a high level of psychological evaluation and treatment, but provided none for him.

39.

As a result of the failures of the individual defendants herein, Mr. Hill was given a full month of his prescription medications to hold in his cell.  Mr. Hill inhaled most of that within 8

days of his incarceration at Sheridan FDC, resulting in his death.  Furthermore, the defendants

classified the death as suicide before any autopsy or toxicology results were released.  Mr. Hill's

blood indicated a presence of his prescription, but there were no pills in his body.  The

determination of death by suicide was false and intended to deceive.

40.

As result of the death of Zachary Hill, the Estate has incurred damages to include funeral

expenses, loss of future economic value and the pain and suffering endured by Zachary Hill as he

waited to die.

**Second Claim for Relief**

**8th Amendment Failure to Protect**

*Individual Defendants*

41.

Plaintiff alleges all previous paragraphs as if more fully set forth.

42.

Zachary Hill had a protected right under the 8th and 14th Amendments to the United States

Constitution to be free from harm, to be protected from himself, other inmates and BOP

employees.  Zachary Hill had a protected Constitutional right to receive protection from medical

staff and security staff.  Zachary Hill had a constitutional right to be free from known or

expected harms including suicide, overdosing or self-harm. The defendants in this case were well

informed as to the risks presented to Zachary Hill respecting his medications including the

danger Mr. Hill posed to himself.

43.

These defendants were well aware of the long-term risk Mr. Hill had frequently presented

to himself from overdosing, attempted suicide and his long battle with mental illness and drug

abuse.  These defendants should not have given Mr. Hill drugs that were contraindicated in

patients with heart conditions.  These defendants knew or should have known Mr. Hill was not

an individual who should have been provided with multiple doses of medication to keep in his cell.  These defendants knew or should have known Mr. Hill was in need of close supervision to prevent self-harm and drug abuse.

### Third Claim for Relief

### Wrongful Death

*United States of America*

44.

Plaintiff realleges all previous paragraphs as if more fully set forth herein.

45.

The United States by and through the individual employees of the Bureau of Prisons was obligated to provide safe, sanitary and secure incarceration for Zachary Hill.  Mr. Hill was entitled to timely and safe medical and psychological care, including being prescribed the proper medicines in the proper dosage, regular monitoring for at risk behavior including self-harm and overdosing, counseling, and a safe environment for his housing as a mentally ill prisoner.  The BOP owed a duty of care to Mr. Hill under the laws of the State of Oregon including one which imputed a special relationship and a special level of care.

46.

The acts and omission of the individual employees that posed a reasonably foreseeable risk of harm and death to Mr. Hill included:

1. John and Jane Does were staffed at Sheridan FDC with the duty to be aware of and knowledgeable in Mr. Hill's past serious and significant psychological history inside BOP including his serious drug and alcohol addiction;

2.  John and Jane Does were given full access to Mr. Hill's prior medical and psychological history which included evidence of his two previous suicide attempts, his self-harm activities, his impulse control difficulties, his diagnosis with Schizophrenia, auditory and visual hallucinations, and a serious heart condition.

3.  John and Jane Does were given information that Mr. Hill had a significant addiction disorder which historically manifested itself in serious self-harming ways. Mr. Hill would crush his prescription drugs and inhale them nasally. He would often do this with a significant number of pills at a time.

4.  John and Jane Does knew or should have known Mr. Hill should not be given unfettered access to his medication in his cell with the known historical risk of overdosing and misuse.  Despite this knowledge, John and Jane Does gave Mr. Hill at least two different medications which were contra-indicated with his heart condition, which in turn caused overdose, heart failure and death.

5.  John and Jane Does knew or should have known Mr. Hill had not historically been given unlimited access to his medications inside his cell but was required to go to a medical distribution center (pill line) to be given the exact and precise amount of medication. However, despite this, John and Jane Does gave Mr. Hill at least a one month supply of his medication, which he consumed in several days, causing his death.

6.  John and Jane Does knew or should have known Mr. Hill had a serious heart condition that had gone untreated by BOP for a decade and that any inappropriate amount of narcotics in his system would likely cause a cardiac event with a highly likely outcome of death;

7.  John and Jane Does knew Mr. Hill was a high risk inmate with a long and troubled history and should have been closely monitored for any risky behaviors.  Despite this knowledge, defendants failed to have Mr. Hill in proper housing, failed to provide him

with regular monitoring, failed to keep his medications out of the cell, failed to have Mr. Hill seen by trained and competent care providers.

8. John and Jane Does knew Mr. Hill required a high level of psychological evaluation and treatment but provided none for him.

47.

As a result of the failures of the individual defendants, Mr. Hill took too much of his medications, causing heart failure and death.  Mr. Hill was a highly vulnerable inmate and the defendants herein had a high duty to monitor, care and evaluate Mr. Hill.  Their negligence caused this young man's death.

48.

As a result of the death of Mr. Hill the Estate suffered economic damages of $250,000 and non-economic damages of $2,500,000.

WHEREFORE Plaintiff prays for relief as follows:

1. A finding that the individual defendants violated Mr. Hill's protected Constitutional rights and his Estate is entitled to the economic damages of $250,000 and non-economic damages of $2,500,000;

2. Plaintiff intends to seek punitive damages against the individuals for the Bivens claims;

3. A finding that the individual defendants were negligent and caused Mr. Hill's death, damaging the Estate in the amount of $250,000 in economic damages and $2,500,000 in non-economic damages;

4. Attorney fees on the Bivens claims; and

5. Such other costs and damages as the court may deem appropriate.

Dated this 14th day of February 2017.

Respectfully submitted,

/s/Michelle R. Burrows
Michelle R. Burrows OSB86160
Attorney for Plaintiff