**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**ROSA HILL,** Personal Representative of the **ESTATE OF ZACHARY HILL**,

Plaintiffs,

v.

**DR. PETER LE, DR. NEAL SOLOMON, DR. JOHN JACKSON, MR. ERIC DYER, DR. ANDREW GRASLEY, JOHN AND JANE DOES 1-5, THE UNITED STATES OF AMERICA**,

Defendants.

Case No. 3:17-cv-250-SI

**OPINION AND ORDER**

Michelle R. Burrows, MICHELLE R. BURROWS PC, 1333 NE Orenco Station Parkway # 525, Hillsboro, OR 97124; Hala Gores, HALA J. GORES PC, 1332 SW Custer Drive, Portland, OR 97219. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Kevin Danielson, Assistant United States Attorney, U.S. DEPARTMENT OF JUSTICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Defendant United States.

**Michael H. Simon, District Judge.**

Plaintiff asserts a claim for wrongful death under Oregon state law against the United States. The United States moved for summary judgment, arguing that although it has waived its sovereign immunity under the Federal Tort Claims Act (FTCA), that waiver is subject to certain exceptions.

The United States asserted that the "discretionary function" exception applies to Plaintiff's wrongful death claim, and thus the Court does not have subject matter jurisdiction over that claim. The Court previously denied the motion, finding that the discretionary function exception does not apply when the alleged conduct rises to the level of a constitutional violation and that Plaintiff sufficiently showed disputed material facts that the United States violated the Eighth Amendment rights of Plaintiff's Decedent, Zachary Hill. Because the United States contended that it did not understand Plaintiff's Amended Complaint to allege against the United States violations of the Eighth Amendment rights of Mr. Hill and argued that the United States would have obtained different declarations in support of its motion for summary judgment had it known that fact, the Court gave the United States leave to file a new motion for summary judgment. Now before the Court is that motion.

The United States reaffirms its previous motion for summary judgment, arguing that its conduct does not rise to the level of an Eighth Amendment violation. The United States also argues that it was not reasonably foreseeable that its conduct could harm Mr. Hill. For the reasons that follow, the United States' motion is DENIED.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is]

insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

**BACKGROUND**

The Court thoroughly detailed Mr. Hill's background in its previous opinion. *Hill v Le*, 2021 WL 4391706, at *1-5 (D. Or. Sept. 24, 2021). In summary, Mr. Hill was arrested in 2002 on bank robbery charges, found not guilty by reason of insanity, and committed to the custody of the Bureau of Prisons (BOP) for treatment. ECF 2, 4, 27. In 2007, Mr. Hill was released under a lifetime period of supervision, the terms of which he repeatedly violated, creating a cycle of violation and imprisonment that ended in 2014 after Mr. Hill was arrested for assaulting a federal officer. ECF 66, 67, 78-10. During Mr. Hill's stays in BOP custody, he assaulted other inmates and staff, attempted suicide and other forms of self-harm, and abused alcohol and prescription medications. Mr. Hill was specifically disciplined for "snorting" (crushing and inhaling) prescription medications in July 2012 and in April 2013. ECF 78-6 at 13.

BOP classified Mr. Hill as a Care Level 4 patient, the highest category of care, which is reserved for inmates who require, "acute care in a psychiatric hospital and cannot function in general population." ECF 78-22 at 9. Mr. Hill remained at Care Level 4 until his death. ECF 78-1 at 6. Before his arrest for assaulting a federal officer, Mr. Hill was housed exclusively in federal medical facilities, including the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, consistent with his Care Level 4 designation. After his final arrest, however, Mr. Hill was placed at the Federal Correctional Institution, Sheridan (Sheridan), which is not a medical facility. Mr. Hill was housed in the general population unit, except for a two-week period when he was housed in Sheridan's Special Housing Until at his own request. ECF 78-15.

From his arrival at Sheridan in October 2014 until his death, Mr. Hill underwent many psychological evaluations, including by Sheridan psychiatrist Dr. Le, Dr. Alexander Horwitz, BOP psychological services, and various intake screeners for transfers of Mr. Hill for court hearings. At Mr. Hill's evaluation upon his return to Sheridan on February 19, 2015, following transfer for a hearing,

> Dr. Le recited Mr. Hill's previous two suicide attempts but noted that Mr. Hill "denied any current suicidal ideation and agreed to contact staff if he becomes suicidal." *Id.* Dr. Le found Mr. Hill's mental status to be "within normal limits and absent of any gross psychopathology" and concluded that Mr. Hill "was deemed appropriate for placement in general population." *Id.* Despite Mr. Hill's "discharge diagnoses" in September 2013 of "schizoaffective disorder, bipolar type, and personality disorder NOS with antisocial and borderline traits," Dr. Le believed that "[n]o follow-up is necessary at this time." *Id.* It is unclear whether Dr. Le considered Mr. Hill's many violations of the terms of his release, including those violations relating to mental health treatment and drug and alcohol abuse and particularly the violations that occurred in August 2014. It is also unclear whether Dr. Le considered: (1) Mr. Hill's many disciplinary violations during his custody in BOP, including for medication misuse; (2) Mr. Hill's history of medication noncompliance; or (3) that Mr. Hill required involuntary medication protocol.

*Hill*, 2021 WL 4391706, at *4.

Notably, at this time BOP also had access to

> placement forms completed during Mr. Hill's transports to and from Multnomah County Jail and other facilities for court hearings. For example, Mr. Hill's U.S. Marshals Form 129 dated February 17, 2015 states that Mr. Hill is "psychotic/delusional/assaultive," has "mental probs/schizophrenia/paranoia," is "violent" and "assaultive towards other inmates" and should be left in restraints. ECF 78-34 at 17. Mr. Hill's U.S. Department of Justice Medical Summary of Federal Prisoner in Transit Form dated January 15, 2015 states that he has a "history of suicide attempt," "polysubstance abuse," "high risk medication use," "schizophrenia," "psychosis," and "depression."

*Id.* at *5

Mr. Hill was then placed in general population with a cellmate, Rodney Tate, who had a "self-carry" prescription for 100mg of Zoloft (sertraline). Tate was in possession of four bottles shortly before Mr. Hill's death, possibly because he was hoarding his medication. ECF 78-5 at 6. Mr. Hill was found unresponsive on February 27, 2015, and died later that day. An autopsy determined that his cause of death was sertraline overdose, and his death certificate lists atherosclerotic heart disease under "other significant condition contributing to death." ECF 65-1 at 1; ECF 78-2 at 1.

## DISCUSSION

Defendant provides a new declaration from the Federal Bureau of Prisons (BOP) Chief Pharmacist Captain Michael Long in support of Defendant's original arguments. Defendant argues that the BOP was not deliberately indifferent to the medical needs of Mr. Hill, the discretionary function exception applies, and Defendant is immune from suit. Alternatively, if the discretionary function exception does not apply, Defendant argues thar there is no genuine issue of material fact that the BOP was negligent because Mr. Hill's death was not foreseeable.

### A. Deliberate Indifference

Defendant argues that Plaintiff fails to establish that there are material facts in dispute as to whether BOP was deliberately indifferent to Mr. Hill's serious medical needs. Defendant frames the case as one about assigned Mr. Hill to a roommate with Zoloft. Defendant's primary argument is that Zoloft is a safe medication, even when taken in large quantities. Defendant relies on the conclusions of the BOP National Pharmacy and Therapeutics (P&T) meetings regarding the safety of Zoloft. Specifically, Defendant states that a group of doctors and pharmacists at the 2005 and 2011 P&T meetings determined that inmates could safely self-carry a 30-day supply of Zoloft.

The group based this conclusion on data suggesting that most Zoloft-related fatalities were connected to doses greater than 150 times the daily dose. Defendant also points to data on BOP's inmate suicide rates. In 2014, participants in the P&T meeting reviewed suicide data for the previous

three years and concluded that no changes to policy, procedure, clinical practice guidelines, or formulary items were necessary. The meeting participants reviewed 59 suicides. None of the fatal overdoses were connected to Zoloft. Finally, Defendant relies on the testimony of Captain Long, a pharmacist who has worked for the BOP for 28 years. Captain Long stated that he was not aware of any inmate suffering a fatal overdose from Zoloft alone, despite BOP having dispensed 136,915 prescriptions. Based on this evidence, Captain Long does not believe that Mr. Hill's death was reasonably foreseeable by being placed in a cell with a roommate that self-carried Zoloft.

This case, however, is not about the safety of Zoloft. It is about a very unique inmate, one who had spent decades in the care of BOP. BOP had voluminous records demonstrating that Mr. Hill "engaged in serious self-injury and suicide attempts during his commitment," ECF 78-2 at 4, had serious mental illness that generally required involuntary medication to successfully treat, and that he had a major substance abuse problem that he was never able to successfully treat. That is why Mr. Hill was classified as a Care Level 4 inmate, who required housing in a medical facility. Yet BOP put Mr. Hill in the general population of a regular facility, and did not even treat him like a Care Level 3 inmate, yet alone a Care Level 4 inmate.

Mr. Hill had a well documented history of crushing and inhaling prescription medications while in BOP custody. *See, e.g.*, ECF 78-2 at 4 ("[O]n February 12, 2013, Mr. Hill was acting strange and other inmates reported that he inhaled crushed bupropion."); *id.* at 6 ("On multiple occasions [Mr. Hill] was known to crush and inhale prescribed medications."); 78-6 at 10 ("History of prescription drug diversion and abuse (i.e. diverting Artane and Wellbutrin, for purposes of crushing and snorting as an inhalant)."); *id.* at 20 ("[Mr. Hill] did acknowledge to the Risk Assessment Panel that he had in fact diverted his medication the day prior to the incident, subsequently cut it up into a powder, and then 'snorted' it up his nose."). Defendant notes that acetaminophen and aspirin were common medications in suicide attempts of inmates in BOP custody and that one successful suicide was with acetaminophen. Placing an inmate with Mr. Hill's history in

general population of a non-medical facility could have resulted in him being placed with a roommate with acetaminophen or aspirin. The fact that he ended up with a roommate with Zoloft and that was the drug that killed him is not the alleged primary problem with Defendant's conduct. It is the type of evaluation Mr. Hill was given and the housing in which he was placed that ultimately ended up with Mr. Hill being in the situation that allowed him to obtain the Zoloft.

Captain Long's declaration also is called into question by the fact that the BOP's Undetermined Death Review states that "Mr. Hill ingested a lethal dose of sertraline (more than four times what is considered contributory to death)" indicating that the BOP knew that there is a level of sertraline considered contributory to death. ECF 78-2 at 6; *see also* ECF 103 at 5, ¶ 8 (discussing that overdoses of sertraline alone or in combination resulted in 244 deaths). Although Captain Long declares that he had no knowledge of any BOP inmates having died from Zoloft alone, he and the BOP did have knowledge that sertraline was among the most common drugs used by inmates in suicide attempts. ECF 103 at 8, ¶ 15.

Defendant also argues that there is no evidence that Mr. Hill obtained drugs from a roommate. It is not clear from the record where Mr. Hill obtained the numerous medications that he regularly abused while in custody. It is clear, however, that BOP knew that Mr. Hill swallowed bleach while in custody at Oregon State Prison. *See* ECF 78-33 at 6. It is highly unlikely it was his own bleach. Additionally, BOP knew that Mr. Hill "obtained a morphine tablet from another inmate." ECF 78-33 at 8. This argument, therefore, is not persuasive.

Viewing the facts in the light most favorable to Plaintiff, as the Court must do at this stage of the litigation, the recently filed declaration from Captain Long does not change the Court's previous finding. A reasonable factfinder could conclude that the relevant Sheridan personnel were exposed to the volume of information about Mr. Hill's unique history and, as a result, had actual knowledge of the risk of placing Mr. Hill in the general population of a non-medical facility without proper monitoring and with access to other inmate's prescription and non-prescription medications, but

disregarded that risk. Additionally, a reasonable factfinder could find that an inmate with Mr. Hill's specific history of abusing prescription drugs was so obviously at risk of harm or death from being placed in a cell with access medications that the Sheridan officials had subjective knowledge of the risk. Thus, there is an issue of fact regarding whether the Sheridan officials were deliberately indifferent, and the discretionary function exception to the FTCA does not apply at summary judgment.

**B. Reasonable Foreseeability**

Defendant argues, in the alternative, that the BOP complied with its duty of care to Mr. Hill because it was not reasonably foreseeable, even with his history of abusing prescription drugs, that Mr. Hill would suffer a fatal overdose from Zoloft. Defendant again points to P&T drug safety determinations, based on medical literature and BOP's past experience, that Zoloft was a safe medication for inmates to self-carry because high doses generally resulted in minor side effects. Defendant also relies on the testimony of Captain Long to support this claim.

For the same reasons that the Court previously found an issue of fact regarding deliberate indifference (which is a more stringent standard than negligence), the Court now finds an issue of fact on negligence. The BOP was aware of Mr. Hill's history of suicide attempts and his history of abusing prescription medication. And, although Captain Long is undeniably an expert in pharmacology, he did not appear to consult or comment on Mr. Hill's history of crushing and inhaling and otherwise abusing prescription drugs in reaching his conclusions. Mr. Hill's serious and well-documented history of abusing prescription medication is central to this case; without that context, the opinions of the P&T meeting and Captain Long regarding the safety of Zoloft are less helpful.

It is not clear whether the evaluations of the safety of Zoloft were done based on ingesting the medication versus snorting the medication. Further, the key issue is the conduct of the BOP in putting an inmate with Mr. Hill's unique history and Care Level 4 designation essentially

unmonitored into the general population of a non-medical facility, with access to other inmate's medications (because they are not locked up, as the Court previously discussed). This includes Zoloft, which the BOP knew that (1) in large doses can be considered contributory to death; and (2) inmates had attempted suicide with in the past.

## CONCLUSION

The Court DENIES Defendant's Supplemental Motion for Summary Judgment (ECF 102). The parties are directed to confer and then contact the Courtroom Deputy for the setting of a trial date.

**IT IS SO ORDERED**.

DATED this 14th day of February, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge